IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


IN RE ESTATE OF NEWMAN


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE ESTATE OF HARLEY NEWMAN, DECEASED.

LINDA MARTENS, PERSONAL REPRESENTATIVE OF THE
ESTATE OF HARLEY NEWMAN, DECEASED, APPELLEE,

V.

STEWART NEWMAN, APPELLANT.


Filed March 31, 2020.    No. A-19-481.


Appeal from the County Court for Douglas County: CRAIG Q. MCDERMOTT, Judge. Affirmed.

Stewart Newman, pro se.

Nicholas E. Halbur, of Elder Law of Omaha, P.C., L.L.O., for appellee.


PIRTLE, BISHOP, and ARTERBURN, Judges.

PIRTLE, Judge.

INTRODUCTION

This matter returns to us following remand to the county court for Douglas County for a new trial after concluding the testator's incarcerated son's due process rights had been violated since he was denied the opportunity to participate in the first trial by telephone. See *In re Estate of Newman*, 25 Neb. App. 771, 913 N.W.2d 744 (2018). Stewart Newman appeals again, following the trial court's order that his father's Last Will and Testament (the Will) was valid and should be probated. We affirm the trial court.

- 1 -

BACKGROUND

Stewart has been incarcerated since 2010. The Will was executed February 15, 2016, in a patient room in a care facility in Omaha. Present in the room were the testator, his wife--the patient, the testator's daughters, Linda Martens, who is also the personal representative, Jane Westring, and the paralegal employed by the testator's lawyer, Melinda Streetman, who also notarized all the signatures. When it came time to execute the Will, the daughters left the room and the witnesses joined the group. The Will specifically excluded Stewart as a beneficiary, and the witnesses to the execution and the notary public all testified they had no qualms about the testator's cognition on February 15, and that he specifically affirmed the exclusion of his son.

On March 28, 2016, Martens as personal representative, filed an informal probate of the Will. Stewart filed a "Petition of Claim and Request of Formal Testacy" on April 15, 2016, which the personal representative construed as a claim for personal property. The personal representative denied Stewart's claim.

The initial trial in this matter was held September 27, 2016. Stewart was denied the opportunity to participate by telephone. Stewart appealed following the original trial and raised several issues in addition to his claim that his due process rights had been violated. This court remanded the matter for a new trial and instructed the trial court to allow Stewart to participate in the second trial by telephone. The second trial in this matter was held February 11, 2019. The trial court allowed Stewart to participate by telephone and allowed him to testify, over the personal representative's objection, after a notary public in the prison positively identified Stewart and the court administered the oath. Stewart's testimony was limited to the introduction of and foundation for exhibits which included letters between Stewart and the testator, a deed to the family home, and bank statements from the testator's bank account showing transfers of funds from the testator to Stewart's prison account.

Following the second trial, the court found the Will executed by the testator on February 15, 2016, was a valid will and that it should be probated by the personal representative. The court again denied the relief requested in Stewart's petition of claim and request of formal testacy which had not been granted previously. Stewart appeals the decision of the trial court.

ASSIGNMENTS OF ERROR

Stewart raises four assignments of error. The first, that the court found the Will to be "valid and self-proven" since the testator did not initial each page. Second, Stewart claims the trial court erred in failing to find the notary engaged in the "unauthorized practice of law." Third, that the trial court abused its discretion in finding the exhibits he offered were irrelevant and lacked foundation. And fourth, that the trial court again erred in disallowing his "Petition of Claim" initially filed in 2016.

STANDARD OF REVIEW

An appellate court reviews probate cases for error appearing on the record made in the county court. *In re Estate of Balvin*, 295 Neb. 346, 888 N.W.2d 499 (2016). When reviewing questions of law in a probate matter, an appellate court reaches a conclusion independent of the determination reached by the court below. *Id.* The probate court's factual findings have the effect

of a verdict, and an appellate court will not set those findings aside unless they are clearly erroneous. *Id.*

An appellate court, in reviewing a judgment for errors appearing on the record, will not substitute its factual findings for those of the trial court when competent evidence supports those findings. *In re Estate of Forgey*, 298 Neb. 865, 906 N.W.2d 618 (2018).

ANALYSIS

WILL IS SELF-PROVING

Neb. Rev. Stat. § 30-2327 (Reissue 2016) provides that
every will is required to be in writing signed by the testator or in the testator's name by some other individual in the testator's presence and by his direction, and is required to be signed by at least two individuals each of whom witnessed either the signing or the testator's acknowledgment of the signature or of the will.

Compliance with this statute makes a Will "properly executed." The trial court relied on the testimony of the witnesses, both of whom identified the testator, who appeared to them to be competent to execute his will, and who then proceeded to sign his will in their presence. The trial court found the Will to be properly "executed."

The trial court also found the Will to be "self-proving" pursuant to Neb. Rev. Stat. § 30-2329 (Reissue 2016), since the "properly executed" will was signed by the testator and the witnesses "before an officer authorized to administer oaths under the laws of this state or under the laws of the state where execution occurs and evidenced by the officer's certificate, under official seal." The execution of the Will was acknowledged by a notary public authorized to administer oaths in Nebraska.

Stewart did not offer any evidence disputing the testator's competence, nor did he offer any evidence refuting the testimony of the witnesses that they signed in the presence of the testator and the notary public. Stewart claims the Will was not properly executed nor was it self-proving, because the testator did not initial each page of the document even though the acknowledgement the testator signed indicates he had initialed each page. Stewart relies on § 30-2329 for the requirement that each page of a will must be initialed by the testator in order for the document to be properly executed or self-proving. The statute says no such thing. We find no merit in Stewart's claim that the absence of initials on each page makes the Will invalid in any way and affirm the trial court's finding that the Will was valid.

UNAUTHORIZED PRACTICE OF LAW

Stewart claims the notary public, Streetman, was engaged in the unauthorized practice of law since she was also employed as a paralegal and had drafted the testator's will after relying on information in a "client intake form" used by her employer, Elder Law of Omaha, P.C., L.L.O. It is the practice of Streetman's employer for paralegals to create an initial draft of a will for submission to the licensed lawyer supervising their work before it is put in final form. The final draft was reviewed by the supervising attorney and then presented to the testator.

In her dual capacity as the notary public who acknowledged the signatures of the testator and the witnesses, Streetman testified she followed her employer's standard practice for acknowledging wills. Streetman testified when a testator executes a will she always asks the testator to identify the personal representative, any beneficiaries, and any "exceptional clauses," which in this case included the paragraph excluding a child. Streetman testified she specifically asked the testator if it was his intent to exclude Stewart and that the testator specifically said he intended to exclude Stewart. Streetman testified the testator's wife was also in the room at the time of the execution and even though she was hooked up to breathing equipment and could not speak, she nodded her head in agreement when the testator was asked if he intended to disinherit Stewart. Streetman testified she confirmed the spelling of names with the testator and then after he and the witnesses signed the document, she acknowledged their signatures and affixed her seal.

The unauthorized practice of law is defined by Neb. Ct. R. § 3-1001 as

the application of legal principles and judgment with regard to the circumstances or objectives of another entity or person which require the knowledge, judgment, and skill of a person trained as a lawyer. This includes, but is not limited to, the following:

(A) Giving advice or counsel to another entity or person as to the legal rights of that entity or person or the legal rights of others for compensation, direct or indirect, where a relationship of trust or reliance exists between the party giving such advice or counsel and the party to whom it is given.

(B) Selection, drafting, or completion, for another entity or person, of legal documents which affect the legal rights of the entity or person.

(C) Representation of another entity or person in a court, in a formal administrative adjudicative proceeding or other formal dispute resolution process, or in an administrative adjudicative proceeding in which legal pleadings are filed or a record is established as the basis for judicial review.

(D) Negotiation of legal rights or responsibilities on behalf of another entity or person.

(E) Holding oneself out to another as being entitled to practice law as defined herein.

Stewart did not present any evidence refuting the testimony of Streetman that her conduct was limited to administrative tasks, nor did he present any evidence tending to prove she engaged in specific examples of the "unauthorized practice of law." We find no merit in Stewart's claim that Streetman engaged in the unauthorized practice of law.

ADMISSION OF EXHIBITS

Stewart was sworn in and offered documents identified as exhibits 2 through 7 into evidence. The personal representative objected to the exhibits based on foundation and relevance. The court took the exhibits under advisement and ultimately sustained the personal representative's objections.

A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that

discretion. *O'Brien v. Cessna Aircraft Company*, 298 Neb. 109, 903 N.W.2d 432 (2017). An abuse of discretion, warranting reversal of a trial court's evidentiary decision on appeal, occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

Stewart offered exhibit 2, a packet of letters from the testator, reporting the news of the day and all signed, "love, dad." Exhibit 3, several receipts from the prison showing deposits of funds into Stewart's account, were offered to show the testator intended to support Stewart financially. Stewart argues the letters are some evidence of an ongoing relationship between the testator and himself and that there is foundation for the documents because Stewart is the addressee, he received the letters, and he recognizes his father's handwriting. Stewart argues these letters tend to show that it must have been the personal representative, rather than the testator, who was responsible for excluding Stewart from the Will. The personal representative objected on the grounds of relevance and foundation. The court excluded exhibits 2 and 3 concluding there was no evidence presented by Stewart which showed the testator was under any duress or undue influence when executing his will. The court concluded Stewart was speculating that the personal representative was somehow responsible for excluding Stewart from the testator's will and found the documents were irrelevant. We cannot find an abuse of discretion in the exclusion of exhibits 2 and 3.

Stewart offered a selection of inheritance tax filings from the court file as exhibit 4. The personal representative again objected on the grounds of relevance and foundation. The court had already taken judicial notice of the contents of the court file, including the inheritance tax forms, so the court could, in its discretion, limit evidence which could be characterized as cumulative. We cannot find an abuse of discretion in the exclusion of exhibit 4.

Stewart offered bank account statements as exhibits 5 and 6, and the deed to the testator's home as exhibit 7, in an effort to criticize the personal representative's management of the estate. Stewart alleges the personal representative took $59,000 out of the testator's bank account several days before he died and removed the testator's wife's name from the deed to the family home. The personal representative objected again on the grounds of relevance and foundation. We cannot find an abuse of discretion in the exclusion of exhibits 5, 6, and 7 since there is no evidence connecting the bank withdrawal and alteration of the deed while the testator was alive, to whether or not the testator's will was valid.

Stewart has failed to persuade this court that the trial court abused its discretion in excluding exhibits 2 through 7. Consequently, we will not disturb the evidentiary rulings made by the trial court because they were not against justice or conscience, reason, and evidence. See *O'Brien v. Cessna Aircraft Company*, 298 Neb. 109, 903 N.W.2d 432 (2017).

DISALLOWANCE OF CLAIM

Stewart filed a "Petition of Claim" on May 24, 2016, which was disallowed by Martens, the personal representative. This issue was presented to this court when this matter was appealed the first time. We described the assignment of error as follows:

Stewart attempted to combine the contest of the will with a creditor's claim against the estate. The claim against the estate was discussed at the September 22, 2016, hearing.

Martens' counsel stated that she had disallowed Stewart's property claim in the "Objections" she filed in response to Stewart's "Petition of Claim and Request of Formal Testacy." The "Objections" stated that she was disallowing all claims beyond his demand for formal probate of the will. Martens further stated that Stewart had not filed a petition for allowance and that the time allowed to do so had elapsed.

Neb. Rev. Stat. § 30-2488(a) (Reissue 2016) provides in relevant part:
Every claim which is disallowed in whole or in part by the personal representative is barred so far as not allowed unless the claimant files a petition for allowance in the court or commences a proceeding against the personal representative not later than sixty days after the mailing of the notice of disallowance or partial allowance if the notice warns the claimant of the impending bar.

In the present case, Martens disallowed Stewart's claim for the return of personal property in the "Objections" filed May 24, 2016. Pursuant to § 30-2488, the disallowance shifted the burden to Stewart to file a petition for allowance no later than 60 days after the notice of disallowance. He did not file a petition for allowance within the time allowed. Accordingly, Stewart's claim for the return of his personal property was not before the court. This assignment of error is without merit.

*In re Estate of Newman*, 25 Neb. App. 771, 782-83, 913 N.W.2d 744, 754 (2018). Stewart filed the same claim for the return of personal property at the start of the second trial and based on the opinion in *In re Estate of Newman, supra*, the trial court denied the claim. Stewart again failed to file a petition for allowance "no later than 60 days after the notice of the disallowance." *Id*. at 783, 913 N.W.2d at 754. Stewart assigns the second denial of his claim as error, and we find his claim to be without merit, again, because the claim for the return of property was not before the trial court.

## CONCLUSION

We affirm the findings of the trial court that the Will is valid and should be probated by the personal representative.

AFFIRMED.